## REED *a.* STRYKER.

*Court of Appeals; December Term*, 1858.

### CREDITOR'S ACTION.—JOINDER OF PARTIES.

The complaint in a creditor's action alleged that the judgment-debtor had made a fraudulent general assignment, with intent to hinder and delay his creditors, and that the assignee was guilty of a breach of faith in the management of the assets; and sought to set aside the assignment, and render the assignee personally liable. It also alleged that the debtor had, at various times, made several other conveyances, in fraud of creditors, to various persons made defendants in the action which it also sought to have set aside.

*Held*, that these facts constituted but one cause of action, and were properly set forth in one complaint. Though there be no privity between the several transferees in such case, there is a privity between each of them and the debtor, which makes it proper to join them all as defendants in an action to reach the property of that debtor.[*]

Appeal from a judgment on demurrer.

This was a creditor's action brought against a judgment-debtor and his assignee for the benefit of creditors, and several transferees of his property. The facts are fully stated in our

[*] See to similar effect, Morton *a.* Weil, 11 *Ante*, 421.

report of the case below, 6 *Ante*, 109. Judgment having been given for the defendant on the demurrer, the plaintiffs appealed to the Court of Appeals.

*A. Becker*, for the appellants.

*S. L. Manning*, for the respondents.

By THE COURT.—HARRIS, J.—The single question in this case is, whether the complaint contains one or several causes of action. If several, there is a misjoinder, for the several causes of action do not affect all the defendants.

The plaintiffs severally are the judgment-creditors of the defendant, Peter M. Stryker. Their executions are returned unsatisfied. They are still in pursuit of the property of their debtor. They bring this action, alleging that some of his property has been fraudulently conveyed to one of the defendants, some to another, and some to the third. The subject of the action is the debtor's property. The object of the action is to remove the illegal impediments which the defendants have placed in their way, so that the property of their debtor may be applied to the satisfaction of their debts. It is as much a single cause of action, as an action to foreclose a mortgage where persons having various and independent liens upon the mortgaged premises, some on one part, some on another, and still others on the whole, are made defendants. They are in no way connected with each other, but they are each interested in the subject and object of the action, which is to have the mortgaged premises sold, and the mortgage satisfied out of the proceeds; and because they are thus interested, they are not only proper, but necessary parties to the action. So, here, the plaintiffs seek to have the property which they find in the hands of these defendants,—some in the hands of one, and some in the hands of another,—and which, as they allege, has been fraudulently placed there, applied to the payment of their judgments. Each of the defendants has an interest in the controversy. Each is a necessary party to a complete determination of the questions involved in the action.

The case is not distinguishable from Fellows *a.* Fellows (4 *Cow.*, 682). In that case, a decree in chancery for the payment

of money had been obtained against John Fellows, upon which an execution had been issued and returned unsatisfied. A bill was then filed against him to obtain satisfaction of the decree, out of his property. His two sons, William and Thomas, and his son-in-law, Roswell Day, were made defendants. It was alleged that the property of John Fellows had been transferred by him without consideration, and fraudulently; a part to his son William, another part to his son Thomas, and another part to his son-in-law Day. Each defendant demurred to the bill, on the ground that he had been impleaded with the other defendants improperly; that the matters set forth in the bill were distinct and independent of each other. The demurrers were overruled by the chancellor, and upon appeal to the Court for the Correction of Errors, after a most laborious discussion, in which the three justices of the Supreme Court participated, the decision was unanimously affirmed. WOODWORTH, J., said : " The claim against all the defendants is of the same nature. The fraud alleged against them is the same. The question to be decided is in every respect the same. The transfer being fraudulent, the property was not changed by being put into the hands of the defendants. They hold the property of the debtor without title. They are, therefore, necessarily concerned in the thing to be recovered, although they set up distinct interests in separate parcels." SUTHERLAND, J., says : " The general right claimed by the bill is a due application of the property of John Fellows to the payment of the judgment. The subject of the bill, and of the relief, and the only matter in litigation, is the fraud charged in the management and disposition of that property, and in which charge all the defendants are implicated, though in different degrees and proportions. The defendants, therefore, have one common interest among them all, centring in the point in issue in the cause; and distinct matters of different natures are not demanded by the bill. It is one matter, the property of John Fellows, and the point in issue upon which the rights of all the parties must depend is, whether the transfer of that property to his sons and son-in-law was fraudulent or not." And SAVAGE, Ch. J., says : " Each of the defendants separately, we must contend, conspired with John Fellows to defraud the plaintiff by collusively taking separate parts of the property and holding it for his benefit.

There was no privity between William Fellows, and Thomas Fellows, and Roswell Day ; but there was privity between each of them and John Fellows."

The same question was very fully considered and discussed by Chancellor Kent in Brinckerhoff a. Brown (6 *Johns. Ch.*, 139). In that case, the bill had much more of the character of multifariousness than the complaint now in hand. There, as in this case, the plaintiffs were distinct and unconnected judgment-creditors. Their judgments were against a corporation called The Genesee Manufacturing Company. The object of the plaintiffs was to obtain satisfaction of their judgments out of the property of the company, which, as they alleged, had been fraudulently withdrawn from their reach by the defendants. Some of the defendants were trustees of the company, and the bill sought to make them personally liable. Others were stockholders, and the bill sought to have them charged with payment of their unpaid subscriptions. Two of the defendants had purchased personal property belonging to the company. There were various other charges against other defendants, in which their co-defendants were not shown to have any concern. There was a demurrer to the bill on the ground that it was multifarious. It was insisted that the matters of the bill were totally distinct and unconnected. The chancellor, after reviewing the facts of the case, proceeds to say that " it appears from the bill that all the defendants were not jointly concerned in every injurious act charged. There was a series of acts on the part of the persons concerned in the company, all produced by the same fraudulent intent, and terminating in the deception and injury of the plaintiffs. The defendants performed different parts in the same drama. But it was still one piece, one entire performance, marked by different scenes." The demurrer was overruled.

In Boyd a. Hoyt (5 *Paige*, 65), the bill was filed by judgment-creditors of Hoyt, after the return of an execution unsatisfied, to reach property in the hands of the other defendants, one of whom was the son, and the other the son-in-law of the debtor, and which it was alleged had been fraudulently transferred to them. It did not appear that the defendants had any joint interest in the property. On the contrary, it appeared that the property had been received by the son and son-in-law

severally, and at different times. Upon demurrer for multifariousness, the chancellor said: "So far as the bill seeks to reach the property of Hoyt, which has come to the hands of the other defendants respectively, without consideration, and to have the same applied to the satisfaction of the balance due upon the plaintiff's judgment, there is no foundation for the objection that it is multifarious." And he adds: "I have no doubt that two or more persons holding the property of the judgment-debtor under different conveyances, or becoming indebted to him at different times, or for distinct sums, may be joined with him as defendants in creditor's bill." See also Hammond *a.* The Hudson River Iron and Machine Co. (20 *Barb.*, 378).

Thus it appears that upon the point under consideration, the tenor of the authorities is uniform and decisive. The object of the suit is single. The plaintiffs, defeated in the collection of their debts by the ordinary process of law, now seek to reach the property of their debtor from the hands of those to whom he has dishonestly conveyed it. However numerous the persons with whom the property has thus been deposited; however distinct the transactions by which the debtor has sought to place it beyond the reach of his creditors, or however widely it may have been scattered in the execution of this purpose, the effort to recover the property and have it applied to the satisfaction of the plaintiff's debts, embraces but a single cause of action.

The judgment of the Supreme Court, at general term, should be reversed, and that at the special term affirmed.

Judgment accordingly.